## WILSON *vs.* THE CITY OF ATLANTA.

1. This court will not control the superior court in the grant of a new trial on the ground that the verdict is strongly and decidedly against the weight of the evidence, unless that court abused the discretion vested in it; and in this case there was no abuse of it.
2. The streets of a city should be graded so as to be reasonably safe for travel thereon; and whether so or not, must be determined by each locality—the nature of the ground thereat and its surroundings—and not upon any general plan adopted by the city—even if the record showed evidence of such a plan.
3. If the city authorities have power or jurisdiction to erect embank-

ments in the streets, it follows that they have power to make such embankments safe by side railings or other suitable barriers; but whether such railings were reasonably necessary for safety and the city was guilty of negligence in not constructing them, and whether they actually caused the injury, may well be elucidated by the inquiry whether the plaintiff would not have been hurt even if they had been constructed, and that therefore he must show that such barriers would probably have prevented his hurt.

4. Even in case of accident and the running away of horses with a buggy and injury to plaintiff's person, there may be a recovery, if, nevertheless, the negligence of defendant was the real cause thereof, in that the street was not safe for travel; and the real questions in this case are first, was this street, considering the width of the embankment, the height thereof, the slope of descent to the portion not elevated, the condition thereof for smoothness and ease of carriage, reasonably safe for travel; and secondly, if it was not, was the damage to plaintiff really caused by its unsafe condition, or by the running away of plaintiff's horses unaffected by defendant's negligence.

New trial. Municipal corporations. Roads and bridges. Negligence. Damages. Before Judge HILLYER. Fulton Superior Court. October Term, 1877.

Wilson brought case against the city of Atlanta, alleging substantially the following facts: On June 13, 1875, he, with his three children, was riding along Harris street, in Atlanta, when one of his horses became frightened at the whistle of an engine near by, and sprang so suddenly forward as to break the swingletree. This increased the fright of the horses, and they ran away, without fault on plaintiff's part. Harris street was some fifty or sixty feet wide; along the center of it, defendant had built an embankment or grade about ten feet high and two hundred yards long. This was thirty-five feet wide, thus leaving a part of the street sunk below its level. It was the duty of defendant to have placed a railing along the edges of the embankment, to protect passers. As plaintiff's horses ran, the buggy was pulled to the side of the embankment and thrown over, injuring him seriously. The accident resulted from defendant's building such an embankment and then leaving it improperly exposed.

On the trial the jury found for plaintiff $5,000.00 ; defendant moved for a new trial, which was granted, and plaintiff excepted.

The other facts will be found in the opinion.

L. J. GLENN & SON; McCAY & TRIPPE, for plaintiff in error.

W. T. NEWMAN ; JOHN L. HOPKINS, for defendant.

JACKSON, Judge.

This was an action on the case for damages for injuries to the person of the plaintiff grounded on an alleged unlawful and negligent grading of the streets of Atlanta. The case was before us on demurrer to the declaration, and it was then held that the declaration was good, because the declaration alleged that the city was negligent in constructing the embankment where plaintiff's horses ran away with the buggy and hurt him, in not providing it with necessary railings or other means of protection, and in not keeping the street in safe condition, and that such negligence was the real cause of the injury. 59 *Ga.*, 544. When tried regularly before the jury, on its return to the circuit court, the jury found five thousand dollars for the plaintiff ; the city moved for a new trial, the court granted it on all the grounds alleged in the motion, and the plaintiff appealed to this court by writ of error.

The question is, did the court err in granting the new trial on any ground taken in the motion therefor ?

1. Those grounds are that the verdict is against the law and the evidence, and against the charge of the court on various parts of the charge extracted therefrom and incorporated in the motion. No exception is taken in the motion to the charge, or any portion of it, as erroneous. The case therefore made in the exceptions grounded on the motion, is nothing more or less than this: Is the verdict so clearly

legal and so strongly supported by the evidence that this court is required to say that the superior court abused the discretion with which the law invests that court, of granting a new trial on the ground that the verdict is against the law and the evidence? We think not. We think that on the .points on which this court put the case in affirming the judgment overruling the demurrer of the city of Atlanta to the plaintiff's declaration, to-wit, on the two points: first, was the city negligent? and secondly, did that negligence really cause this injury? the court did not abuse its discretion in setting aside the verdict and granting the new trial.

But in the bill of exceptions error is assigned that the court held and ruled in granting the motion for a new trial, that the city had a right to adopt a general system of grading and draining the streets, and if this street was so drained and graded, that the plan being in the discretion of the city council as the law-making power of the city, the plaintiff could not recover; and again, that the city could not erect railings, having no right or power to do so, and if they could, and had done so, then the plaintiff must show that such barriers would have prevented the injuries of plaintiff, which in the case of a run-away of the horses the court thought could not be proved; and also, that in a case where a swingle-tree becomes detached, as in this case, the plaintiff cannot recover damages.

2. On the first point, we think that there is no evidence in the record of any such general plan on the part of the city to grade the streets as would control this case; and that in the nature of things it is impracticable that there should be such a general plan. The streets should be so graded as to render them reasonably safe for travel, and an embankment, from its height or narrowness, might not be reasonably safe at one point without railing, whereas, at another, it might be so. The doctrine of a general plan or system of grading the streets, if there had been evidence thereof, in our judgment, has nothing to do with this case.

3. If the city authorities have power to grade the streets so as to make a high and dangerous embankment in the center thereof, it follows that they have necessarily the power to make it safe for travel, and if a railing would make it safe, they have the right to put it there. We do not hold with the court below that the city has no power to put up a railing, if desirable and useful to do so. In regard to the remainder of this assignment of error, the judge evidently intended to say, that to test the questions of whether or not there was negligence in not putting up the railing, and whether such negligence caused the injury to the person of plaintiff, the plaintiff must show that such railing or barrier would have prevented the damage; and, in this view, we think that he ruled correctly.

4. It seems that the court was also of opinion that where there was a runaway of plaintiff's team, there could be no recovery, no matter what was the negligence of defendant in respect to the streets—or, in other words, as the assignment of error has it, that, "in a case where a swingle-tree becomes detached, and horses are frighened and run away, and run over an embankment, as in this case, a plaintiff cannot recover damages."

In our judgment, this ruling is too strong. There might be a case where the swingle-tree did become detached, and the horses did run away, and where the city would be liable. Concede that this embankment was not so wide as it is, and much higher from the level of the natural ground, and an accident happened and horses ran away, and the faulty plan or structure of the grading was the real cause of the damage, there could be a recovery, notwithstanding the running away of the horses. One object of good streets and roads is to protect against accidents. The street should be reasonably safe for ordinary travel, including such accidents as might, without fault on the part of the traveler, befall him. There might be cases of mutual fault and contributory negligence, and modification of damages to suit the respective laches or fault of either side. We do not mean to say that

this is such a case. The width of this graded street, the slope which seems to furnish a gentle descent to the ground on either side, the perfect order in which it seems to have been kept, may well have dissatisfied the judge who tried the case with the verdict of the jury, and constrained him to interpose in behalf of law and right. We shall not disturb the judgment setting aside the verdict and granting the new trial.

Judgment affirmed.